**TEXAS INDUSTRIAL TRAFFIC LEAGUE et al. v. RAILROAD COMMISSION OF TEXAS et al.**

No. 10073.

Court of Civil Appeals of Texas. Austin.

Feb. 18, 1953.

Rehearing Denied March 11, 1953.

Frank A. Leffingwell, Frank C. Brooks, both of Dallas, for appellants.

Price Daniel, Atty. Gen., Charles E. Crenshaw, Sp. Asst. Atty. Gen. by Dean J. Capp, Asst. Atty. Gen., Ballinger Mills, Jr., Galveston, Palmer Hutcheson, Jr., and Joe G. Fender, Houston, Robert Thompson, William R. McDowell, of Dallas, for appellees.

ARCHER, Chief Justice.

This is a suit instituted by the Texas Industrial Traffic League et al., on March 6, 1952, against the Railroad Commission of Texas and its members, attacking a freight order issued by the Commission dated February 27, 1952, increasing Texas intrastate freight rates generally 6%. A temporary restraining order, a temporary injunction, and a permanent injunction were sought. The temporary restraining order was denied. At a hearing on the temporary injunction, it was stipulated that it would be on the merits, and would be a final hearing regarding the issuance of a permanent injunction, and following extensive hearing, the trial court, without the aid of a jury, entered its judgment denying the injunction and upholding the action of the Commission in granting the increase.

The appeal is under Art. 6453, Vernon's Ann.Civ.St. and is before this Court on thirteen points assigned as error. The first point is that the court erred in holding that the question involved is whether there is substantial evidence to support the order of the Commission. Points Nos. two, three, five, seven, eleven and twelve are directed to the error of the court in making fact findings not supported by the evidence and in not amending and in refusing to make additional requested findings of fact.

Points Nos. four and six are that the court was in error in not holding that before a rate structure can be found to be reasonable a determination must be made of the return such rate will produce on the reasonable value of the property devoted to public use, and specifically to its use in performing freight service.

Point No. eight is that it was error for the court not to conclude and hold that a freight rate which produces a return on investments of six per cent is just and reasonable, and that a higher rate on investment is unreasonably high insofar as shippers of freight are concerned, and deprive appellants of their rights under the Constitutions of the State and of the United States.

The ninth point is that the court erred in refusing to admit or consider evidence on conditions as they existed at the time of the trial.

The tenth point is that the court erred in not setting the order aside because the Commission in making such order relied on facts not in evidence before it, and finally point thirteen is that the court erred in refusing to set the order aside because the rates prescribed are unreasonable to appellants in that they are substantially higher than rates on the same commodities in the same general territory.

■■■ We believe that the substantial evidence rule is applicable to a judicial review of the action of the Commission in entering the order in question, and that the trial court was justified in limiting the judicial review to determine if the order was reasonably supported by substantial evidence. The rule is applicable in a suit to set aside an order of the Commission granting authority for an increase in freight rates, and the Commission's conclusions will not be disturbed if they have a reasonable basis in the facts. Consolidated Chemical Industries, Inc. v. Railroad Commission, Tex.Civ.App., 201 S.W.2d 124, error ref., n. r. e., and cases cited therein; Railroad Commission v. Metro Bus Lines, Inc., 144 Tex. 420, 191 S.W.2d 10.

In the case of Board of Firemen's Relief and Retirement Fund Trustees of Houston v. Marks, Tex., 242 S.W.2d 181, 183, 27 A.L.R.2d 965, our Supreme Court held that:

"The party aggrieved by the administrative decision is not entitled to a trial de novo in court but must assume the burden of satisfying the courts that the administrative decision is illegal, arbitrary, or capricious; that is, that it is not reasonably supported by substantial evidence. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Fire Dept. of City of

Ft. Worth v. City of Ft. Worth, 147 Tex. 505, 217 S.W.2d 664." Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198.

We then come to a consideration of a review of the evidence, bearing in mind that the function of the trial court was to review the action of the Railroad Commission from the evidence as a whole and not to make an independent rate decision itself, and under the substantial evidence rule, the court's duty was to determine whether there was substantial evidence in support of the Commission's order.

■ The hearing had by the Commission was participated in by the appellants. The Commission made extensive fact findings based on the testimony heard before it and no useful purpose would be had by embodying such findings herein. It is sufficient to say that the findings were that wages paid by the Railroads had increased 16.37% over 1950 and that the average cost of materials and supplies has increased 19.8% in the same period. The total wage increase in Texas was stated to amount to $30,000,000 and the increase in cost of materials and supplies in Texas was stated to amount to $18,000,000.

The six per cent increase applied to all revenue from Texas operations, both interstate and intrastate, based on operations in the year 1950 would produce an increase in revenue of $20,000,000, which it was stated would fail by $28,000,000 to meet the full increase in wages and materials and supplies of $48,000,000.

The Commission found that there have been increases in wages and in the cost of materials and supplies in 1951 over 1950.

Witnesses were heard as to increases in wages and expenses, giving specific examples as well as the overall picture of the situation of the Railroads in their operations.

The Commission found that there was a 14.56% increase in the total operating revenues in 1951 over 1950, and that the operating expenses have increased 21.24% during the same period.

Further findings were made by the Commission, based on testimony presented to it that the rates of return for the years 1948, 1949 and 1950 have been unreasonably low and that the rates prescribed would not be excessive and that:

"Based on the property investment of all Texas railroads, as reported to the Railroad Commission of Texas, and the net railway operating income, the rates of return for the years 1948, 1949 and 1950, figure 5.36%, 4.37% and 5.08%, respectively. * * *

"As has been stated above, based on the property investment of the Texas railroads as reported to the Railroad Commission of Texas, and their net railway operating income for 1950 as so reported, which latter was $44,906,597.-00, the return was 5.08%. A return of 6% on the reported investment of $888,155,738.00, would require net railway operating income of $53,289,346.00. As has been shown above, 6% applied to the 1950 revenues from the Texas operations would produce an increase of $7,418,987.00, and that entire amount added to the 1950 net railway operating income would result in a total railway operating income of $52,325,584.00, and result in a return of .5.89% on investment as reported."

Upon the trial of the case on appeal there was much testimony given in which course sixteen witnesses testified for the plaintiff and five for the defendant, together with certain stipulations, a full hearing was had, and the court found against the plaintiffs.

The court made findings of facts and conclusions of law going into detail of his fact findings, and we believe that such findings are supported by the record.

The court found:

"2. On August 2, 1951, the Interstate Commerce Commission issued its order in Ex Parte No. 175 authorizing generally an increase of six per cent in interstate freight rates and charges in the Western District of the United States, of which the State of Texas is a part.

"3. Following this order, the Railroad Commission of Texas set the application of the Texas railroads, desig-

nated as Docket No. 7838–R, for hearing beginning October 17, 1951, which hearing continued through October 19, 1951.

"4. On February 27, 1952, the Railroad Commission of Texas issued its order in Docket No. 7838–R which generally authorized a six per cent increase in the Texas intrastate freight rates and charges with certain exceptions.

\* \* \* \* \* \*

"7. The entire record of the evidence adduced before this Court discloses that the following facts were in existence prior to and at the time of the issuance of said order of the Railroad Commission of Texas, dated February 27, 1952, in Docket No. 7338–R;

"(a) Operating expenses of the Texas railroads, intervenors herein, materially increased in 1951 over a comparable period in 1950, which is reflected in the fact that railroad wages increased 16.37 per cent over 1950 and the average cost of materials and supplies increased 19.8 per cent in the same period.

"(b) Applying the wage increase of 16.37 per cent to the wages reported and assigned to the operation of the intervenor-railroads in the State of Texas, the wage increase within the State of Texas amounts to approximately $30,000,000.

"(c) Applying the 19.8 per cent increase in the average cost of materials and supplies to the materials and supplies reported and assigned to the operation of the intervener-railroads within the State of Texas, produces an increase in the cost of materials and supplies in Texas of $18,000,000.

"(d) The six per cent increase authorized by the Railroad Commission of Texas applied to all revenue from Texas operations of intervening railroads would produce an increase in revenue of $20,000,000 in 1951 over 1950, which would fall by approximately $28,000,000 of meeting the increases in the wages and in the cost of materials and supplies.

"(e) The intervening railroads' total system operating revenues increased approximately $107,881,197, or 14.56 per cent in the first eight months of 1951, over the same period in 1950, while the intervening railroads' operating expenses increased $112,592,233, or 21.29 per cent in the first eight months of 1951, which, with other charges against income including tax accruals, produced a decrease in Net Railway Operating Income for the same period of $16,075,957, or 17.42 per cent.

"(f) The rate of return, based on the property investment of the intervening Texas railroads, was 5.49 per cent in 1950, 4.70 per cent in 1949, 5.77 per cent in 1948.

"(g) The authorized six per cent increase in the Texas interstate rates and charges will not have a material effect on the volume of traffic handled by the Texas railroads, consequently additional operating revenue will be provided to partially offset increased operating expenses."

The court concluded as a matter of law:

"2. The evidence adduced before this Court constitutes substantial evidence in support of, and affords a reasonable and just basis for, the assailed order of the Railroad Commission of Texas, dated February 27, 1952, in Docket No. 7838–R.

"3. The assailed order of the Railroad Commission of Texas, dated February 27, 1952, in Docket No. 7838–R, is in all things valid and lawful."

Appellants requested the trial judge to amend his findings and to make additional findings, which request was denied.

We believe that the order of the Commission is complete enough to determine the returns on the investment of the railroads in past years, and the prospective returns to be had under the proposed rates and we have set out portions of such findings hereinabove, and that the Commission was justified and met all requirements of adminis-

trative due process by showing that the rates of return under the investment figures were inadequate for the railroads.

■ The railroads in Texas are under the continuing supervision of the Commission and periodic surveys and investigations are made, and such are cumulative, and the Commission is not required to make a complete new engineering and accounting resurvey in every rate hearing, and the Commission may rely upon its official knowledge of all pertinent data revealed to it in former findings which are in the Commission's continuing information file. Railroad Commission v. McDonald, Tex.Civ. App., 90 S.W.2d 581; Red Ball Motor Freight, Inc. v. Southern Pacific Transport Co., Tex.Civ.App., 231 S.W.2d 462, error ref., n. r. e.

■ We do not believe that the Commission or the trial court were required to make specific findings as to the value of the property of the railroads devoted exclusively to performing freight service as distinguished from passenger service. There is no charge of confiscation in this case, the issue is the reasonableness of the Commission's order. The cases cited by appellants are to be therefore distinguished.

The most recent case which we believe is determinative of the question is that of King v. United States, decided December 22, 1952, by the Supreme Court of the United States. 344 U.S. 254, 73 S.Ct. 259.

■ It was not error for the court to refuse to consider evidence as to conditions arising after the Commission's order. Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106; Potter v. Sun Oil Co., 144 Tex. 151, 189 S. W.2d 482.

■ The Railroad Commission is permitted to consider pertinent data from its official files, although not introduced in the hearing before it, and the appellants were not deprived of their property without due process of law.

The applicable rule is clearly stated in 73 C.J.S., Public Administrative Bodies and Procedure, § 123, p. 443, as follows:

"* * * there is substantial authority, apparently based on the same reasoning which supports administrative notice, that at least in some proceedings an administrative body may act, not only on the evidence presented before it, but on its own expert knowledge and information, * * *." Railroad Commission of Texas v. Brown Express, Tex.Civ.App., 1937, 106 S.W.2d 327, error dism.; North East Texas Motor Lines v. Texas & Pacific Motor Transport Co., Tex.Civ.App., 159 S.W.2d 926.

■ Appellants contend that the rates prescribed are unjust and unreasonable to them in that they are substantially higher than the rates on the same commodities in the same general territory.

The order of the Commission recites and states the results of extensive consideration by the Commission of the rate relationship existing on these commodities.

The basic rates, both interstate and intrastate applicable to these commodities were all established in specific rate hearings for that purpose. The increases authorized by the order of February 27, 1952, are not integral parts of the rate structure, but are additional charges for the time provided in the order. Then, too, an aggrieved shipper may apply to the Commission for such modification as he may be entitled to. As is said in North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 1266, 89 L.Ed. 1760:

"The very nature of such a broad general order requires that it contain a saving clause for future modification and adjustment of particular rates."

This type of a saving clause was incorporated in the instant order.

The judgment of the trial court is affirmed.

Affirmed.