**ROBERTSON TRANSPORTS, Inc., et al.**

**v.**

**TRANSPORT CO. OF TEXAS et al.**

No. 10242.

Court of Civil Appeals of Texas.

Austin.

June 2, 1954.

Rehearing Denied June 23, 1954.

John Ben Shepperd, Atty. Gen. and Dean J. Capp, Sp. Asst. Atty. Gen., for Railroad Commission.

Albert G. Walker, Austin, Harry W. Patterson, Searcy Bracewell, Bracewell & Tunks, Houston, for Robertson Transports, Inc.

Kelley, Looney, McLean & Littleton, Rogers Kelley, Jackson Littleton, Edinburg, for appellee Motor Carrier.

Walter Caven, Austin L. Hatchell, Austin, Hutcheson, Talliaferro & Hutcheson, Houston, J. T. Suggs, Dallas, Baker, Botts, Andrews & Parish, Houston, Wigley, McLeod, Mills & Shirley, Galveston, G. H. Penland, Dallas, Adair Dyer, Dallas, Allen, Gambill & Gambill, Fort Worth, Seth Barwise, Fort Worth, Kenneth McCalla, Austin, of counsel, for appellee Railroad.

ARCHER, Chief Justice.

This is an appeal from a judgment of the 98th District Court of Travis County cancelling and declaring null and void an order issued by the Railroad Commission of Texas on August 19, 1952, pursuant to an application of Robertson Transports, Inc.

Appellant, Robertson Transports, Inc., is a specialized motor carrier holding specialized motor carrier certificate No. 6950, the amendment of which certificate is involved in this appeal. This carrier filed an application on June 18, 1952, to amend its certificate so as to authorize the transportation of chemicals, liquid chemicals and chemical products in bulk in tank trucks to, from and between all points in Texas. Prior to amendment of this certificate, the authority therein prescribed had been confined to the transportation of certain enumerated chemicals without the authority to transport chemicals generally. After notice and hearing, the Railroad Commission promulgated its order of August 19, 1952, granting authority to transport chemicals, liquid chemicals and chemical products in accordance with the application.

Appellees, Transport Company of Texas, R. P. York, d/b/a York Transport Company, Inc. and a group of Texas Railroads operating intrastate in Texas, who were permitted to intervene by the trial court, brought suit seeking a restraining order and a temporary and permanent injunction restraining the enforcement of the Commission's order, and a judgment declaring such order invalid and void. (The Railroads later abandoned their plea for permanent injunction.)

The trial court granted an order without notice on November 11, 1952, restraining enforcement of the Commission's order and any operations thereunder, and thereafter a hearing was held on the temporary injunction on November 29, 1952, resulting in the entry of a temporary injunction on December 4, 1952. This order granting a temporary injunction was appealed by these same appellants and was dissolved by this Court in Robertson Transports, Inc. v. Transport Company of Texas, Tex.Civ. App. Austin 1953, 256 S.W.2d 134, error granted. Thereafter the Supreme Court reversed the judgment of this Court and reinstated the temporary injunction. Transport Company of Texas v. Robertson Transports, Inc., Tex.Sup.1953, 261 S.W.2d 549. Trial on the merits without jury was then held on December 14, 1953, which resulted in the entry of the judgment herein complained of on December 21, 1953.

Pursuant to Rule 296, T.R.C.P., and in compliance therewith, appellants requested the Court to make findings of fact and conclusions of law. The Court complied with this request, and appellants in accordance with Rule 298, T.R.C.P., requested additional or amended findings, which were overruled in toto.

The subject matter of this case has been before this Court and the Supreme Court whose decision is reported in 261 S.W.2d 549, supra, and this certificate was before this Court; and the Supreme Court in Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759, held that the order of the Commission did not contain sufficient findings to satisfy the statutory requirement.

The appeal is before us on sixteen points assigned as error in the trial of the case and are: that the order was supported by substantial evidence; and set out in detail the inadequacies of the services and facilities of the existing carriers and the public need; in holding that the services of appellee had been very acceptable; that the application was a proper one; that the Commission could legally consider information obtained from previous hearings as reflected by its official files; that the order dated July 18, 1951, was not res adjudicata so as to preclude the Commission from granting the order; that the Commission was correct in issuing its order of August 19, 1952, in compliance with Section 5a(d), Article 911b, and in finding that existing carriers were not rendering adequate transportation service; that it was improper to consider evidence as to conditions arising subsequent to the date of the order; that substantial evidence was introduced in support of the order and it was issued in compliance with Section 4, Article 911b, and in compliance with Sections 13a and 14(b), Article 911b.

Appellees contend that the application did not comply with Section 5a(c), Article 911b, V.A.C.S., sufficiently to give the Commis-

sion jurisdiction of it, and that the order was not supported by substantial evidence and did not set forth full and complete findings of fact pointing out in detail the inadequacies of the service and facilities of the existing carriers and the public need for the proposed service, and that the previous orders of the Commission are res adjudicata of the matters of proper application as of the date the Commission acted, that the trial court is not required to make findings on matters on which no evidence was offered and is presumed not to have considered inadmissible or incompetent evidence, and finally, that the order grants more authority than was sought in the application.

Section 5a(c) of Art. 911b, V.A.C.S., is as follows:

"The Commission shall have no jurisdiction to consider, set for hearing, hear, or determine any application for a certificate of convenience and necessity authorizing the operation as a 'specialized motor carrier' or any other common carrier except as provided in the preceding paragraph unless the application shall be in writing and set forth in detail the following facts:

"1. It shall contain the name and address of the applicant, who shall be the real party at interest, and the names and addresses of its officers, if any, and shall give full information concerning the financial condition and physical properties of the applicant.

"2. The commodity or commodities or class or classes of commodities which the applicant proposes to transport and the specific territory or points to, or from, or between which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use.

"3. It shall be accompanied by a map, showing the territory within which, or the points to or from or between which, the applicant desires to operate, and shall contain a list of any

existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application."

The application is long and we shall embody herein only such portions as may be essential to a determination of sufficiency to meet the statute.

Applicant, appellant, proposed to amend Specialized Motor Carrier Certificate to Authorize, in addition to existing services, naming specific chemicals, additional services, naming chemical products and liquid chemicals, in bulk in tank trucks between all points in Texas, that such commodities require the use of special services and equipment.

The names and addresses of a number of carriers operating in the proposed territories were given.

The applicant sets out a list of commodities it is authorized to transport and seeks authority to transport all chemicals, chemical products and liquid chemicals.

The assertion is made in the application that common carrier motor carriers operating in the proposed territory do not engage in the type of services proposed; that the services of the railroads are inadequate, too slow and undependable to meet the need and convenience of the public; that two carriers are authorized to transport chemicals, chemical products and liquid chemicals in bulk now, but that their services and facilities are inadequate because of a lack of equipment, and that there is a definite need for additional services.

The application states that applicant will render prompt service and that in a former hearing in which it was granted its present authority, it offered sufficient evidence to have authorized the granting of the authority proposed.

The application was accepted by the Commission, notices issued, hearing had in

which appellees took part, and a determination made and the authority requested was granted.

Assuming, but not deciding, that the application met the requirements of the statute, we will consider the question as to whether the Commission's order of August 19, 1952, was established by substantial evidence and on the trial in the District Court was reasonably supported by substantial evidence.

Section 5a(d) of Article 911b provides that before the Commission shall grant an application it shall hear, etc., such application in accordance with Sections 8, 9, etc., and if the Commission shall find any such applicant entitled thereto, it shall issue a certificate, etc. Further provision is made that:

"The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. Likewise, the Commission shall have no authority to grant any contract carrier application for the transportation of any commodities in any territory or between any points where the existing carriers are rendering, or are capable of rendering, a reasonably adequate service in the transportation of such commodities.

The order was designated as amending Specialized Motor Carrier Certificate No. 6950, and recites the filing of the application, notices and a hearing, and found that the applicant was the owner of Certificate No. 6950 and was seeking to amend the certificate by adding "chemicals, chemical products and liquid chemicals," and that amendment would authorize the transporting of liquid chemicals in bulk regardless of the trade names.

The order stated that the Commission had issued orders to Transport Company of Texas and York Transport authorizing them to transport specifically named chemicals, as well as chemicals, chemical products and liquid chemicals, which were then in effect.

The order recited that there was much confusion arising from interpretation of the Robertson certificate as to whether he is authorized to transport chemicals, and sets out the names of various chemicals, and that new named chemicals, and that a traffic man would not be able to interpret the certificate.

Other findings are that the use of the services of Transport Company of Texas by the chemical company in Bishop has been very acceptable, that the company at Bishop is expending its business and that the services of two carriers would hardly be adequate. Findings were made as to different metals required in the construction of tanks in the hauling of certain chemicals, and found that the applicant is equipped with such trucks, and that there was delay in securing tank cars—that hauling by tank trucks was much quicker than by tank cars.

Finding was made that the two State-wide motor carriers cannot render an adequate service throughout the State to the chemical industries and that there exists a public necessity and convenience for such service, and finally that after considering the evidence, the law and its own records, rules and regulations, the Commission was of the opinion that the application should be granted.

The trial court filed extensive findings of fact and conclusions of law. The fact findings were as to the filing of the application, protest hearing, and the granting of the certificate, and mention was made of prior orders and contents thereof.

The court found that the application did not set forth in detail the inadequacy of existing transportation facilities nor specify wherein additional facilities are required, and took into consideration the evidence of the prior applications of 1949 and 1951 and that the order is based in part as to pos-

sible future growth of the chemical industry and is speculative.

The court found that the order did not contain full and complete findings of fact, etc., but were general in nature, and that it was not established that the services and facilities of existing carriers were inadequate, but that such were adequate; that there was no showing of a public necessity or that public commerce would be promoted by the granting of the order, that all requests for transportation of any commodity covered by the order have been adequately acceptably handled.

The court concluded as a matter of law that under the provisions of Article 911b, Section 5a(c), the Commission had no jurisdiction to consider, etc., the application because of a failure in the application to set forth in detail the inadequacies, etc.

Other conclusions were made to evidence in prior hearings as to the authority of the Commission to interpret its previous orders or consider future facts; that the order was void in failing to contain full and complete findings of fact, etc.; that there was no substantial evidence to support a finding of inadequate service, public necessity, public convenience, etc., but that the evidence demonstrated the adequacy of the services and facilities, and an absence of public need or convenience.

The evidence presented on the trial of this case is that of four witnesses for plaintiff, appellees herein, and of seven for the defendants, appellants herein, and for the most part is testimony adduced in the hearing before the Commission in which the order under attack was granted on July 30, 1952.

Witness McNamara, a chemical engineer, testified that from a scientific viewpoint everything is a chemical, but from a commercial point of view such is not true. The witness discussed and defined the several commodities listed in the certificate and that there are 26 in number and each have other names than listed, and that it would be confusing to a layman to determine just what could be transported.

Mr. Robertson testified as to the ownership of Certificate No. 6950, and of terminals and equipment suitable for transporting chemicals of a total value of over $300,000 and if necessary would buy more, and that there is confusion in determining what chemicals his company can transport.

C. R. Best, Assistant Manager of appellant, testified that his company had numerous requests to transport chemicals not specifically named, and recited some; that confusion exists in interpreting his certificate; that it is necessary to consult chemists in order to ascertain whether certain named chemicals not listed in the certificate can be transported; that it is not practical to operate under the old certificate.

R. C. Pitts, Assistant Traffic Manager for Phillips Chemical Company, testified that his company had plants located in four places in Texas and expansions are underway at some of the locations; that various types of chemicals are being manufactured including acetaldehyde, and great plant expansions are being made; that he has made an effort to use the services of appellant on the movement of acetaldehyde from Bishop to Houston but found that appellant did not have the necessary authority and that his company is shipping by truck transports; that he is familiar with the fact that appellees York and Transport Company of Texas have authority to transport chemicals in liquid form generally.

Alex Wolff testified that his company is a manufacturer of vinegar in Houston, Texas, and distributes his product to various points in Texas by rail and customer trucks in barrels and in bulk amounting to about 400,000 gallons annually and that appellant has equipment to transport vinegar in stainless steel or wooden tanks; that he knew nothing about the equipment of appellees.

John Stocks, Supervisor for a chemical company in Houston, testified that he often ships acetaldehyde, formaldehyde and caustic soda in tank trucks, sometimes less than a tank but has to pay full tank truck rate; that appellant has compartmentalized equip-

ment that would be more convenient and less expensive; that his company is building a new plant.

A. DeRouen testified that the celanese corporation, chemical division manufactures chemicals at Bishop, Texas, and is constructing a plant at Pampa, Texas, and expects to ship chemicals to various points in Texas, some of which are not specifically named in Robertson's certificate, and has requests to ship by Robertson but cannot tell what chemicals he can legally ship. That there are only two tank truck companies authorized to transport chemicals generally and that these are two of the appellees.

Testimony was given by the traffic manager for one of the appellees that Transport Company of Texas did not have compartmentalized tanks. The President of this company testified that the chemical industry is growing in Texas and that he thought his trucking firm was in a better position to handle the chemical traffic than rail carriers because it is a faster service.

The Vice President of appellant Robertson Transports, Inc., testified as to the value of his company's equipment and that Robertson began operating under the new certificate, and that during the time between the issuance of the certificate and the granting of the restraining order on November 19, 1952, his company transported four or five chemicals not authorized under the old certificate, aggregating fifteen or twenty tank truck loads, and had entered into an agreement to transport chemicals from Bishop to Houston and Deer Park.

Mr. York, President of York Transport Co., Inc., of Houston, testified that his company had State-wide authority to transport various types of chemical liquids in tank trucks in bulk since 1949; that specialized equipment was purchased but none has been put into full use. That his company can move much more chemical commodities than are available. That his company has not been offered any vinegar for transportation but he could handle 400,000 gallons easily and would like to have the business and needs it. The witness testified

that he could haul acetaldehyde in some of his pressure tanks and could purchase other equipment; that he is in a position to handle any amount of such commodity that is tendered.

Mr. Franklin, Traffic Manager for Transport Company, testified that his company has been authorized to transport liquid chemicals and acids since 1949 on a State-wide area, and has terminals at various cities in the State, and that his meat company had 155 pieces of equipment, some of which are specialized for hauling chemicals, and can and would be glad to move all types of commodities offered, and that the granting of the Robertson permit would divert business.

Other testimony was had to the effect that the existing carriers had the equipment to transport all liquid chemicals tendered and if necessary would purchase additional.

■ We do not believe, in view of the decisions in Thompson v. Hovey Petroleum Company, 149 Tex. 554, 236 S.W.2d 491, and in Thompson v. Railroad Commission, supra, that the order in question is valid because it failed to set forth full and complete finding of fact and pointing out in detail the inadequacies of the service and facilities of the existing carriers and the public need for the proposed service as is required by Section 5a(d).

■ The evidence was before the trial court who in his findings found that the services and facilities of existing carriers were adequate and acceptable for the transportation of the only new commodity involved, and that it was not established by substantial evidence that there was a public necessity for the service or that public convenience would be promoted and that the existing carriers were rendering a reasonably adequate service, and we believe the court was justified in so holding.

We have carefully considered all of the testimony and summarized some of it and we do not find evidence of a substantial nature that there is a public necessity for the additional service granted, or that pub-

lic convenience would be promoted by the granting of the application, or that reasonable service is not being rendered.

Section 6(d) of Article 911b provides that the Commission is given authority to issue specialized certificates when it is shown by substantial evidence that there exists certain conditions therein set out.

We recognize that the court cannot substitute its judgment for that of the Commission unless it be shown that the judgment of the Commission is without foundation in fact, or was unreasonable or arbitrary. Shupee v. Railroad Commission, 123 Tex. 521, 73 S.W.2d 505.

The substantial evidence rule was considered by our Supreme Court in Trapp v. Shell Oil Co., Inc., 145 Tex. 323, 198 S.W.2d 424, and therein determined. Hawkins v. Texas Company, 146 Tex. 511, 209 S.W.2d 338, affirming decision of Court of Civil Appeals in 203 S.W.2d 1003; Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198; Board of Water Engineers v. Colorado River Municipal Water District, Tex.Sup., 254 S.W.2d 369.

Having concluded that the order was not reasonably supported by substantial evidence, and failure to set forth full and complete findings of fact pointing out in detail the inadequacies of the service and facilities of the existing carriers and the public need for the proposed service, we do not believe it necessary to pass on the other points raised by appellant.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice.

I respectfully dissent partly because I am a devout believer in the constitutional declaration and mandate that "monopolies are contrary to the genius of a free government, and shall never be allowed". Art. 1, § 26, Texas Vernon's Ann.St. Constitution.

Specifically I am of the opinion that the application and order were sufficient and that the order was reasonably supported by substantial evidence.

In any event the judgment should be reversed and the cause remanded because the trial court improperly admitted and presumably considered evidence that Transport Company of Texas had purchased additional equipment suitable for the transportation of chemicals subsequent to the time the Commission entered its order.

If a carrier can thus "patch up" and overcome a finding of the Commission that the present service was inadequate because of the lack of such equipment then existing carriers will be entrenched in a monopolistic field so long as they correct, before trial, inadequacies found by the Commission and made the basis of its order. This, in my opinion, should not be the law.