SABINE–NECHES TRAILWAYS, INC.,
Appellant,

v.

RAILROAD COMMISSION OF TEXAS
et al., Appellees.

No. 10583.

Court of Civil Appeals of Texas.

Austin.

Jan. 21, 1959.

Rehearing Denied March 4, 1959.

Rankin, Cherry & Martinez, H. H. Rankin, Jr., Edinburg, Black & Stayton, Austin, for appellant.

Will Wilson, Atty. Gen., J. W. Wheeler, Morgan Nesbit, Asst. Attys. Gen., Samuels, Brown, Herman, Scott & Young, Fort Worth, Looney, Clark, Moorhead & Mathews, Thomas E. James, Mary Joe Carroll, Austin, for appellees.

HUGHES, Justice.

Sabine-Neches Trailways, Inc., appellant, filed this suit to cancel an Amended Motor Bus Certificate granted Southwestern Greyhound Lines, Inc., by the Railroad Commission of Texas. The general effect of the Amended Certificate was to authorize Greyhound to operate a motor bus service between Houston and Port Arthur over State Highway 73 which, the record shows, has not been completely constructed.

Following a nonjury trial judgment was entered sustaining the order of the Commission.

The principal question presented is whether or not the application for and the issuance of the Amended Certificate were premature.

The application was filed June 29, 1955, and the final order of the Commission, affirming its order of October 28, 1955, was issued August 1, 1956.

Sec. 7, of Article 911a, Vernon's Ann. Civ.St., provides:

"The Commission shall also ascertain and determine if a particular highway or highways designated in said application are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highway or highways by the general public for highway purposes. And if the Commission shall determine, after hearing that the service rendered or capable of being rendered by existing transportation facilities or agencies on such highways is reasonably adequate, or that public convenience on such highways would not be promoted by granting of said application and the operation of motor vehicles on the public highways therein designated, or that such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highway or highways by the general public for highway purposes, then in either or any of such event said application may be denied and said certificate refused, otherwise the application shall be granted and the certificate issued upon such terms and conditions as said Commission may impose and subject to such rules and regulations as it may thereafter prescribe."

We quote from the October 28, 1955, order of the Commission:

"The Commission further finds from the evidence and its records that the applicant is an existing motor bus carrier operating under the jurisdiction of the Railroad Commission of Texas, among other places between Houston and Beaumont, via intermediate points over U. S. Hwy 90 and thence to Port Arthur. The Commission further finds that the applicant is financially able and capable of inaugurating and maintaining the motor bus operations proposed in the application; that the equipment proposed to be operated by the applicant meets the requirements of the laws of the State of Texas in regard to safety devices, dimensions, etc., and that the highways over which the applicant proposed to operate are of such type of construction and maintenance as to permit of the additional traffic sought to be placed thereon without unreasonable interference with the use thereof by the general public for ordinary highways purposes. In this connection, the Commission finds that the route involved in the instant application proposes the use of the new Airline Highway between Houston and Port Arthur, Texas, designated as State Hwy 73; that the plan and construction of State Hwy 73 has been under way by the Texas State Highway Department over a period of many years; that it necessitated the construction of large bridges over a number of streams and bayous along its route which have been completed; that the entire project has taken many years to develop and that final completion of the project is assured within a comparatively short time. The Commission further finds that the construction of State Hwy 73 has progressed to such a point that this Commission knows, from the evidence and the facts furnished to it by the Texas State Highway Department pursuant to the requirements of the Texas Motor Bus Law (Article 911a) the exact route of State Hwy 73; that it is to be a four-lane divided highway of the most modern construction and design; that State Hwy 73 is to be a 'freeway' type highway, with limited access to cross traffic, planned for safety and capable of accommodating many more thousands of vehicles per 24-hour day than the existing double-lane highways of the state highway system; that the entire right-of-way between Houston and Port Arthur has been acquired by the State of Texas the precise route and location of State Hwy 73 has been fixed and determined by the Texas State Highway Department; that a portion of said freeway has already been constructed and open to the public; that construction and work on the entire remaining portion thereof is in progress and is proceeding according to plan; and the entire road with the exception of that portion between the intersection of State Hwys 61 and 73, and the intersection of State Hwy 124 and State Hwy 73 at Winnie, Texas, will be completed and available for use by the public on or about December 31, 1956, or approximately 14 months from the present date. As to this portion State Hwy 73-T is open to the use of the public and can be used by applicant under its proposal. Based upon these findings the Commission concludes that the construction of State Hwy 73 has proceeded far enough to disclose the route and the type of construction thereof so as to enable this Commission to know not only in a general way, but with relative exactness the amount of traffic such highway will bear; that the estimated date of completion of the highway is sufficiently close in time to the date when the operation under the certificate is to begin as to enable this Commission reasonably to anticipate the character of the traffic to which State Hwy 73 will be subjected and to de-

termine whether the added burden of the proposed service would constitute an unreasonable interference with the use of such highway by the general public for highway purposes. In short, the Commission is of the opinion that under the decision of the Supreme Court of Texas in Railroad Commission v. Southwestern Greyhound Lines, Inc., [138 Tex. 124] 157 S.W.2d 354, we have jurisdiction over the application and we so find."

This order, as stated, was affirmed by order of the Commission on August 1, 1956, following a final hearing on April 4, 1956.

It is the position of appellant that substantial evidence does not support the findings of the Commission which are essential to the exercise of its jurisdiction under the provisions of Art. 911a set out above.

This statute, Sec. 7, was construed in Railroad Commission v. Southwestern Greyhound Lines, Inc., 138 Tex. 124, 157 S.W.2d 354, 355, from which we quote:

"It is clear from a reading of the above statute that the Railroad Commission, in determining whether a certificate should be granted, is required to take into consideration the type of the construction and the state of repair of the particular highway designated in the application in order to determine whether such highway could support the added burden to which it would be subjected if the certificate should be granted. Necessarily, the Railroad Commission could not take into consideration the type of construction of a highway for which no plans of construction had been agreed upon. Likewise, the Commission is required to take into consideration the use to which the highway is being subjected by other traffic in order to determine whether the added burden would constitute an 'unreasonable interference with the use of such highway or highways by the general public for high-

way purposes.' Necessarily, the Railroad Commission could not take into consideration the traffic as it would exist on such highway at the time of the beginning of the operation of the proposed bus line where it was not known when, if ever, the road would be constructed. Since the construction of the proposed highway had not progressed far enough to enable the Railroad Commission to discharge adequately the above-mentioned statutory duties prerequisite to the granting of such a certificate of public convenience and necessity, the Commission was without authority to grant same.

"The act in question confers on the Railroad Commission authority to grant certificates of public convenience and necessity over the public highways of this State. The act defines a 'public highway' as 'every street, road, or highway in this State.' It contemplates an existing highway, and not a mere projected but wholly nonexistent highway. We do not hold that the highway would have to be completed and ready for use by the public before the certificate could be granted. This would be too narrow a view. A more practical construction must be given to the statute. The Commission must have authority to grant the certificate far enough in advance of the completion of the road as to enable the recipient thereof to be prepared to meet the needs of the public as soon as the road is ready for use. But we do hold that before the Commission has jurisdiction to grant the certificate, the construction of the highway must have proceeded far enough to disclose the width of the road and the type of the construction thereof so as to enable the Commission to know in a general way the amount of traffic that it will bear; and the date of the granting of the certificate must be sufficiently close in time to the date when the operation under the certificate is to

begin as to enable the Commission reasonably to anticipate the character of the traffic to which the road will be subjected, in order that the Commission may determine whether the added burden constitutes an unreasonable interference with the use of such highway by the general public for highway purposes."

We followed and applied this case in Kerrville Bus Company v. Continental Bus System, Tex.Civ.App., 208 S.W.2d 586, writ ref., N.R.E. We there held that a highway 94% complete and in use was in a sufficient state of completion to sustain a motor bus certificate issued by the Commission upon appropriate findings under Sec. 7, Art. 911a.

Before noticing the facts upon which our decision turns we first must determine as of what time or upon what date the validity of the certificate should be tested. The occasion for this is that appellant, in its original brief, used April 4, 1956, the date of the final hearing, as the latest possible date on which the condition of the highway must be appraised whereas appellees, in their original briefs, took into consideration all matter relevant to construction and completion of the highway up to the date of trial in the Court below which date was November 25—December 5, 1957.

■ The law on this question is well and authoritatively settled. There must be in existence at the time the Railroad Commission entered its order sufficient facts to support the order. Railroad Commission v. Shell Oil Company, 139 Tex. 66, loc. cit. 80, 161 S.W.2d 1022, loc. cit. 1030. In view of this authority and others which could be cited we do not consider the opinion of this Court in Robertson Transports Inc. v. Transport Co. of Texas, Tex. Civ.App., 269 S.W.2d 472, writ ref., N.R.E., as a departure from this established rule.

■ The Commission acted finally in this matter on August 1, 1956, prior orders in this matter having expressly reserved the right of the parties to file exceptions. The last hearing held by it was on April 4, 1956. It is our opinion that the August 1 date must control because until then the Commission had not relinquished control over the application or its order and had not, until then, acted irrevocably. This is so even though there was no further hearing beyond April 4, because the Commission is not restricted to the evidence introduced at the hearing for it is permitted to consider pertinent data from its official files, which includes information furnished it by the Highway Commission under the provisions of Sec. 10 of Art. 911a, V.A.C.S. Texas Industrial Traffic League v. Railroad Commission, Tex.Civ.App., 255 S.W. 2d 903, Austin, writ ref., N.R.E.; Railroad Commission v. McDonald, Tex.Civ. App., 90 S.W.2d 581, Austin, no writ history.

■ There is no requirement that the Commission should consider data in its own files prior to the hearing. It would seem more logical to consider it later. In any event data in the files of the Commission when it finally acted as well as other facts then in existence which bear on the validity of the order may be produced in Court to substantiate or invalidate the order attacked.

The parties having been advised that it was our tentative opinion that August 1, 1956, was the critical date we requested that the case be rebriefed and this has been done.

The amendment to Motor Bus Certificate 41, held by Greyhound, authorizes Greyhound to operate a motor bus service between Houston and Port Arthur over State Highway 73 via Cove, Wallisville and Winnie, and temporary authority, pending final completion of Highway 73, to operate over an alternate route for a part of the distance as follows: From the junction of Highway 73 and Highway 61 over Highway 61 to its intersection with Highway 73–T; thence over said Highway 73–T to Stowell; thence over Highway 124 to

Winnie and between Winnie and Beaumont over Highway 124 and over other alternate routes stated in the Amended Certificate.

We will not consider the condition of the alternate routes for the reason that the authority of Greyhound to operate over them is temporary and it is not these alternate routes about which appellant complains. It is disturbed by and here complains only of the grant of permanent authority to operate over Highway 73.

We will now describe the status of Highway 73 between Houston and Port Arthur as the record discloses it to have been on August 1, 1956.

A more direct highway between Houston and Port Arthur than now exists has been sought for many years. It is taking shape as State Highway 73. As far back as 1943 the State began the purchase of right of way. Actual construction was commenced about 1946. Highway 73 between Port Arthur and its junction with State Highway 124, near Winnie, about 35 miles, was complete prior to these proceedings. In fact appellant was granted authority by the Commission June 15, 1954, to institute motor bus service between these points on such highway.

Appellant questions only the status of Highway 73 between the end of the completed section near Winnie and the outskirts of the City of Houston, a distance of approximately 55 miles.

Mr. Duval C. Jarl, an employee of the State Highway Department, gave testimony and supplied data from which the condition of this highway on August 1, 1956, may be succinctly but correctly stated to be:

1. A contract was let December 13, 1956, for grading this strip and erecting bridges etc. thereon. Work under this contract commenced January 7, 1957 and on August 31, 1957 was 59.8% complete.

2. On March 5, 1957, a contract was let for grading and erecting structures on this strip and work thereunder began

(a) Beginning at the intersection of Highway 73 and State Highway 124 and proceeding west there is a three mile strip just east of the intersection of Highway 73 and Farm Road 1406 as to which neither the Austin office of the State Highway Department nor its district office had proposed or received plans, specifications or estimates and for which no contracts for construction had been let and for the construction of which no funds had been allocated prior to August 1, 1956.

(b) Proceeding west from F. R. 1406 there is a strip of 4.3 miles for which, on August 1, 1956, no plans had been approved by the Austin office of the State Highway Department and for the construction of which no contract had been let and no funds allocated therefor prior to such date.[1]

(c) Immediately west of the strip last above described there is a segment of highway about 5.8 miles long for which on August 1, 1956, the Austin office of the State Highway Department had approved no plans and for the construction of which no contract had been let and for which no funds had been allocated prior to such date.[2]

(d) Proceeding further west there is an adjacent strip 4.4 miles long for which on August 1, 1956, no plans had been approved by the Austin office of the State Highway Department and no contract for its construction had been let.[3]

(e) West of the above described three segments of Highway 73 is a strip 6.9 miles long commencing where State Highway 61 intersects such highway and ending at the Trinity River.

April 8, 1957 and was 31.9 complete August 31, 1957.

3. A contract for grading and erecting structures on this strip was let April 3, 1957, actual work commencing two days earlier. This work was 19.3% complete August 31, 1957.

Grading and the completion of bridges and other structures on this strip was 95% complete under a contract let September 30, 1955.

No plans for paving this 6.9 mile strip had been received in the Austin office of the State Highway Department and no contract therefor had been let on August 1, 1956, and no funds therefor had been allocated prior to such date.[4]

(f) West of and adjacent to the 6.9 mile strip above described is a segment 1.2 miles long between the Trinity River and the Old and Lost River. Grading and construction of structures on this strip were virtually complete on August 1, 1956 but on such date no contract for its paving had been let and prior thereto no funds had been allocated for this purpose.

(g) West of and adjacent to the above described 1.2 mile strip is a segment 6.6 miles long which terminates at the Cedar Bayou bridge at the Harris County line.

Contract for grading and construction of structures on and surfacing this strip was let December 13, 1955.[5]

(h) Proceeding further west the next segment is 8.2 miles terminating about one mile east of the San Jacinto bridge.

Contract for grading and construction of structures on this strip was let August 8, 1955 and work thereunder commenced September 8, 1955. On July 31, 1956, this work was 49.9% complete.[6] No plans for paving this strip had been received in the Austin office of the State Highway Department and no contract therefor had been let on August 1, 1956, and prior to such date no funds had been allocated for this purpose.

Disregarding the 6.6 miles strip described in (g) we may summarize as follows:

On August 1, 1956, no plans had been approved and no contracts had been let for the construction of any part of 17.5 miles (a, b, c, d,) of the 55 miles of Highway 73 under consideration and prior to such date no allocation of funds for such purpose had been made.

In addition, on August 1, 1956, no plans had been approved and no contracts had been let for paving 16.3 miles of the 55 miles of Highway 73 under consideration and prior to such date no funds had been allocated for such purpose.

It thus appears that of the 55 miles in question 33.8 miles were unpaved on August 1, 1956, and for which paving no plans had then been approved and no contract let and prior to which date no funds had been allocated for such paving.

■ It is our opinion that the condition of the 55 mile stretch of Highway 73 here involved does not satisfy the requirements of Sec. 7, Art. 911a, supra, as interpreted by the decisions previously mentioned. It follows that the Commission was not authorized to grant the Amended Motor Bus Certificate which it purported to grant appellee, Southwestern Greyhound Lines, Inc.

There is no language in Sec. 7, supra, which indicates that the Legislature had in mind a planned highway, a prospective highway or in fact any highway except one in existence from which certain stated findings could or could not be made. How could the "state of repair" or "the type of construction" of the 33.8 miles of this 55 mile stretch have been ascertained by

4. Contract for paving this strip was let December 3, 1956 and work thereunder began December 10, 1956. This paving was 72.5% complete August 31, 1957.

5. On August 31, 1957 this work was 83.3% complete.

6. This work was completed May 25, 1957. Contract for paving and erection of certain structures on this strip was let December 3, 1956, work thereunder commencing January 3, 1957. This work was 14.2% complete August 31, 1957.

the Commission on August 1, 1956 when not a foot of pavement had then been laid or contracted for and when 17.5 miles of it were wholly unconstructed and not under any contract for its construction.

We recognize the holding in Railroad Commission v. Southwestern Greyhound Lines, Inc., supra, that a highway need not be completed and ready for use before a certificate such as sought here could be granted. It should be, as there held, close enough to completion for the Commission to reasonably know the matters which the statute required it to know before granting a motor bus certificate. From the facts stated it is our opinion that the Commission could not reasonably have known on August 1, 1956, what type of construction more than 50% of this road would have upon completion. Lack of this information was fatal to the jurisdiction of the Commission in the premises.

Appellees seek to discount the condition of the discussed portion of Highway 73 by relying upon the alternate route. We quote from their brief the following sentence which they underscore:

"Indeed, the majority of the data upon which the Appellant relies in support of the contention that Highway 73 was not sufficiently near completion for the Railroad Commission to have jurisdiction relates to that portion of the main Highway 73 which Greyhound does not need to use because of its temporary and alternate route authority over Highway 73–T."

We have stated above that the validity of the certificate over this alternate route is not challenged by appellant. It is our opinion that the alternate route nor its condition is relevant or material to the validity of the permit over State Highway 73. Our authority for this statement is the absence of any requirement in Sec. 7, supra, making it relevant or material.

Appellees have three counterpoints, the first two of which have been disposed of in the above discussion.

Under their Third Counterpoint it is contended that appellant is judicially estopped to question the action of the Commission herein for the reason that in June, 1954 the Commission granted appellant's application for a motor bus permit over that portion of State Highway 73 between Port Arthur and its intersection with State Highway 124, near Winnie, a distance of 35 or 40 miles, and that at the time the Commission acted such portion of the highway was incomplete and final contracts for it had not been let.

A similar contention is made with reference to a permit obtained by appellant in August, 1955 to operate a motor bus over State Highway 73 between Old and Lost River and the Trinity River, a distance of 1.2 miles.

This contention is based upon a pleading filed by Greyhound only although the point is jointly briefed by both appellees.

We will not discuss the applicability of the doctrine of judicial estoppel to administrative proceedings [7] because it is obvious that there is not an identity of issues in this proceeding and in those referred to by appellees.

The permit drawn into question here authorizes motor bus service between Port Arthur and Houston, a distance of about 90 miles. The permits obtained by appellant cover noncontiguous segments of the same highway but total less than half its distance.

The issue of completeness of half a highway is not identical with the issue of completeness of a whole highway.

The judgment of the Trial Court is reversed and judgment is here rendered cancelling the Amended Motor Bus Certificate here involved.

.7. See Davis on Administrative Law, pp. 563–613.