RAILROAD COMMISSION OF TEXAS AND SOUTHWESTERN GREYHOUND LINES, INCORPORATED V. SABINE-NECHES TRAILWAYS, INCORPORATED.

No. A-7261. Decided October 21, 1959.
Rehearing Overruled December 9, 1959.
(329 S.W. 2d Series 80)

*Will Wilson,* Attorney General, and *Morgan Nesbitt,* Assistant Attorney General, for the Railroad Commission, *Samuels, Brown, Herman, Scott & Young* and *William M. Brown,* of Fort Worth, *Looney, Clark, Matthews, Thomas & Harris, Thomas E. James, Mary Joe Carroll* and *Charles D. Mathews* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding the Railroad Commission was without jurisdiction to issue the certificate here in question and that the respondent was judicially estopped to question the jurisdiction of the Commission. Railroad Commission v. Southwestern Greyhound Lines, 138 Texas 124, 157 S.W. 2d 354; Texas Industrial Traffic League v. Railroad Commission, 255 S.W. 2d 903; Long v. Knox, 155 Texas 581, 291 S.W. 2d 292.

*Rankin, Cherry & Martinez* and *H. H. Rankin,* of Edingurg, *Black & Stayton* and *John W. Stayton,* of Austin, for respondent.

MR. CHIEF JUSTICE HICKMAN, delivered the opinion of the Court.

Respondent, Sabine-Neches Trailways, Inc., filed this suit to cancel an Amended Motor Bus Certificate granted petitioner Southwestern Greyhound Lines, Inc., by the Railroad Commission of Texas on August 1, 1956. The certificate authorizes Greyhound to operate a motor bus service over State Highway 73 between Port Arthur and Houston, which highway, the record discloses, had not been completely constructed at the date of the issuance of the certificate. The trial court affirmed the order of the Commission, but its judgment was reversed by the Court of Civil Appeals and judgment rendered cancelling the certificate on the ground that the Commission had no jurisdiction to enter the order. 321 S.W. 2d 170.

The case involves the construction of Section 7 of Article 911a, V.A.C.S., reading as follows:

"The Commission shall also ascertain and determine if a particular highway or highways designated in said application are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highway or highways by the general public for highway purposes. And if the Commission shall determine, after hearing that the service rendered or capable of being rendered by existing transportation facilities or agencies on such highways is reasonably adequate, or that public convenience on such highways would not be promoted by granting of said application and the operation of motor vehicles on the public highways therein designated, or that such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highway or highways by the general public for highway purposes, than in either or any of such event said application may be denied and said certificate refused, otherwise the application shall be granted and the certificate issued upon such terms and conditions as said Commission may impose and subject to such rules and regulations as it may thereafter prescribe."

The order of the Commission under attack set out specifically the route to be followed as follows:

"Between Beaumont and Port Arthur, on the one hand, and Houston, on the other, as follows: from Port Arthur over State Hwy 73 to Houston, and from Beaumont over State Hwy 124 and State Hwy 73 to Houston with an alternate route over State 61 from its junction with State Hwy 73 to its intersection with State Hwy 73-T, and thence over State Hwy 73-T to Stowell and over State Hwy 124 and State Hwy 73 * * * ."

"* * * and from the East end of the Trinity River Bridge to State Hwy 73 over the Wallisville-Liberty Road to its intersection with the F-M Road 563, and thence over State Hwy 61 to its intersection with State Hwy 73-T as an alternate route * * *."

The entire route, including the alternate route, is about 143.4 miles in length. On the date the order was entered, August 1, 1956, 101 miles of the road had been completed, 8.6 miles were

substantially complete, and 33.8 miles were incomplete. Detailed description of the situation regarding the 33.8 miles may be found in the opinion of the Court of Civil Appeals. It consists of several segments varying from 1.2 miles to 16.3 miles in length.

Respondent questions only the status of Highway 73 for a distance of approximately 55 miles of the entire 143.4 miles, and the opinion of the Court of Civil Appeals is therefore directed to a consideration of that section only of the highway. The 33.8-mile segment above mentioned lies within that section.

Section 7 of Article 911a was before this Court for construction in Railroad Commission of Texas v. Southwestern Greyhound Lines, Inc., 138 Texas 124, 157 S.W. 2d 354. Both the petitioners and respondents take the position that the rule of construction there announced supports their respective contentions. While in that case the order of the Railroad Commission was set aside as being beyond its jurisdiction, the case did call for the construction of the statute, and this Court gave it the following construction:

"It contemplates an existing highway, and not a mere projected but wholly nonexistent highway. We do not hold that the highway would have to be complete and already in use by the public before the certificate could be granted. This would be too narrow a view. A more practical construction must be given the statute. The Commission must have authority to grant the certificate far enough in advance of completion of the road as to enable the recipient thereof to be prepared to meet the needs of the public as soon as the road is ready for use. But we do hold that before the Commission has jurisdiction to grant the certificate the construction of the highway must have proceeded far enough so as to enable the Commission to know in a general way the amount of traffic it will bear; and the date of the granting of the certificate must be sufficiently close in time to the date when operation under the certificate is to begin as to enable the Commission reasonably to anticipate the character of the traffic to which the road will be subjected in order that the Commission may determine whether the added burden constitutes an unreasonable interference with the use of such highway by the general public for highway purposes."

The situation in the instant case differs very materially from that which the Court faced in the case just cited. Here there was an over-all plan of the Highway Commission for the con-

struction of a highway 143.4 miles in length through one of the most populous sections of our State. The route of the highway is certain, the towns to be served are known, the right of way has been acquired, and a substantial portion of the route has been completed. It is a matter of common knowledge that in constructing highways of this length contracts are let by segments and portions of the highway will be turned over to the public before other portions are completed. We are not considering a mere projected nonexistent highway, but an existing highway, supplemented by an alternate route. The Railroad Commission had the right to conclude that the Highway Commission would close up the entire segment of the highway within the foreseeable future, and that it would be finished with the same workmanship and material as the other portions of the route. The validity of its order must be judged by the facts and conditions as they appeared when it was entered. We are unwilling to give that strict construction to the statute which would deny to the Railroad Commission the power to conclude that the vital connecting segment of this highway would not be constructed in a manner different from that portion of the highway already finished. In Railroad Commission of Texas v. Southwestern Greyhound Lines, Inc., supra, we pointed out that while the statute contemplates an existing highway, we would not hold such highway must be completed and already in use by the public before the certificate could be granted. As stated in that opinion that would be too narrow a view. Our test there was that before the Railroad Commission has jurisdiction to grant a certificate, the construction of the highway must have proceeded far enough to enable the Commission in a general way to know the amount of traffic it would bear. It is our view that the test laid down in that opinion has been met in this case, and that we should not hold that the Railroad Commission had no jurisdiction to grant this certificate.

Accordingly, the judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered October 21, 1959.

Rehearing overruled December 9, 1959.