NO. 07-05-0411-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 28, 2006



______________________________




TEXAS ALCOHOLIC BEVERAGE COMMISSION, APPELLANT



V.



I GOTCHA, INC. D/B/A MAIN STAGE, APPELLEE




_________________________________



FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY;



NO. 67-212790-05; HONORABLE DON COSBY, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

MEMORANDUM OPINION
 

 The Texas Alcoholic Beverage Commission (TABC) issued an order adopting the
Administrative Law Judge's (ALJ's) Proposal For Decision recommending that I Gotcha,
Inc. d/b/a Main Stage pay a civil penalty of $1,500 in lieu of having its mixed beverage and
mixed beverage late hours permits suspended for a period of ten days. The trial court
reversed the order finding it was not supported by substantial evidence, and TABC filed this
appeal. By two issues, TABC contends the trial court erred as a matter of law in (1) holding
that I Gotcha's motion for rehearing was sufficiently specific and did not waive error, and
(2) finding no substantial evidence to support its finding that the place and manner of I
Gotcha's operations violated applicable law and regulations. We reverse and render.

 On July 31, 2001, Officer Randy Watkins was conducting an undercover
investigation at Main Stage, a topless bar in Fort Worth. The establishment held a mixed
beverage permit and a mixed beverage late hours permit issued by TABC. Jeree Land, a
topless dancer, offered to perform a table dance for Watkins for thirty dollars. After he
accepted, they relocated to a dimly lit semi-private area surrounded by only three walls and
with an opening facing the pool table area. During her performance, Land touched
Watkins's clothed genital area and also licked his clothed genital area.

 Almost four months later, Land was arrested for the incident. Four years later,
TABC gave I Gotcha administrative notice of a hearing for a place or manner violation
stemming from the incident involving Watkins and Land. Following the hearing, the ALJ
entered a Proposal For Decision finding that I Gotcha violated the following sections of the
Texas Alcoholic Beverage Code:

 § 11.61(b)(2)-the permittee violated a provision of this code or a rule of the
commission;

 § 11.61(b)(7)-the place or manner in which the permittee conducts his
business warrants the cancellation or suspension of the permit based on the
general welfare, health, peace, morals, and safety of the people and on the
public sense of decency;

 § 61.71(a)(1)-the licensee violated a provision of this code or a rule of the
commission during the existence of the license sought to be cancelled or
suspended or during the immediately preceding license period;

 § 61.71(a)(11)-the licensee permitted a person on the licensed premise to
engage in conduct which is lewd, immoral, or offensive to public decency;

 § 61.71(a)(17)-the licensee conducted his business in a place or manner
which warrants the cancellation or suspension of the license based on the
general welfare, health, peace, morals, safety, and sense of public decency
of the people; and

 § 104.01(6)-[n]o person . . . or employee may engage in or permit conduct
on the premises of the retailer which is lewd, immoral, or offensive to public
decency, including, but not limited to, any of the following acts:

 permitting lewd or vulgar entertainment or acts . . . . 

See Tex. Alco. Bev. Code Ann. (Vernon 1995 & Supp. 2005). 

 The ALJ recommended a ten-day suspension of I Gotcha's permits or in lieu thereof
a civil penalty of $1,500. After the ALJ's Proposed Findings of Fact and Proposed
Conclusions of Law were adopted by TABC, an order was entered suspending I Gotcha's
permits for ten days unless payment of $1,500 was received. After I Gotcha's motion for
rehearing was denied, it sought judicial review. The trial court entered judgment reversing
TABC's order as not being supported by substantial evidence.

 Relevant to the Commission's issues are the following findings of fact: 8. Ms. Land performed a table dance for Officer Watkins wearing
only a "G" string and high-heeled shoes.


 During the dance, Ms. Land grabbed Officer Watkins' [sic] clothed
genitals and licked his genital area.
 Officer Watkins had been inside Respondent's licensed premises
several times over numerous years and observed the same manner
of conduct occurring as described in Findings of Fact Nos. 8 and 9; he
made arrests at Respondent's licensed premises for persons soliciting
alcoholic beverages and engaging in lewd behavior in the past.


 Also relevant to this appeal is Conclusion of Law Number 3 which provides: (1)

 Based upon Findings of Fact Nos. 1 - 10, Respondent operated its business
in a place or manner contrary to general welfare, health, peace, morals, and
safety of the people and the public sense of decency on July 31, 2001,
because sufficient evidence was presented to establish that a pattern of
inappropriate conduct, namely lewd physical contact between Respondent's
employee and a patron at the licensed premises, solicitation of alcoholic
beverages, and other lewd behavior, was ongoing in relation to Respondent's
business in violation of Tex. Alco. Bev. Code Ann. §§ 11.61(b)(2),
11.61(b)(7), 61.71(a)(1), 61.71(a)(11), 61.71(a)(17), and 104.01(6). 

 We address TABC's issues in a logical rather than sequential order. By issue two,
TABC contends the trial court erred as a matter of law in substituting its judgment by
concluding there was no substantial evidence to support its finding that I Gotcha's
employee was intoxicated on the licensed premises. As pointed out by I Gotcha in its brief,
TABC misstates its issue as there was no controversy regarding an intoxicated employee. 
However, we will address the substance of issue two by which TABC asserts the ALJ's
decision that Land engaged in lewd conduct by sexual contact is supported by substantial
evidence. 

 An administrative ruling of TABC is reviewed under the substantial evidence rule. 
See Tex. Alco. Bev. Code Ann. § 11.67(b) (Vernon 1995); Tex. Gov't Code Ann. §
2001.174 (Vernon 2000). See also Texas Alcoholic Beverage Com'n v. Sierra, 784 S.W.2d
359, 360 (Tex. 1990). Substantial evidence is more than a mere scintilla. Alamo Express
v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815, 823 (1958). The rule is designed
to discourage courts from administering regulatory statutes enacted by the Legislature. 
Lewis v. Metropolitan S. & L. Ass'n, 550 S.W.2d 11, 13 (Tex. 1977). A court may not
invade the fact finding authority of an administrative agency. State Banking Bd. v. Allied
Bank, 748 S.W.2d 447 (Tex. 1988). Nor may a court substitute its judgment for that of an
administrative agency on the weight of the evidence on questions committed to agency
discretion. See Tex. Gov't Code Ann. § 2001.174. See also Auto Convoy Co. v. Railroad
Commission of Texas, 507 S.W.2d 718, 722 (Tex. 1974). A reviewing court may only
determine whether the contested order is reasonably supported by substantial evidence. 
Auto Convoy Co., 507 S.W.2d at 722. 

 An agency's action will be sustained if the evidence is such that reasonable minds
could have reached the conclusion that the agency must have reached in order to justify
its action. Suburban Util. Corp. v. Public Util. Com'n, 652 S.W.2d 358, 364 (Tex. 1983). (2) 
An agency's findings and conclusions are presumed to be supported by substantial
evidence, and the burden is on the opponent to prove otherwise by showing that no
substantial evidence existed at the time of the hearing to support the order. Imperial Am.
Resources Fund v. R. R. Com'n of Tex., 557 S.W.2d 280, 286 (Tex. 1977). Finally, the
agency's decision must be upheld even if the evidence actually preponderates against the
agency's finding so long as enough evidence suggests the agency's determination was
within the bounds of reasonableness. Gerst v. Goldsbury, 434 S.W.2d 665, 667 (Tex.
1968). See also Southwestern Pub. Serv. v. Public Utility, 962 S.W.2d 207, 215
(Tex.App.-Austin 1998, pet. denied).

 I Gotcha received a citation for a place or manner violation permitting public
lewdness for Land's conduct toward Officer Watkins. (3) The ALJ correctly determined that
there was no substantial evidence to establish that Land's conduct occurred in a public
place or that Land acted recklessly about whether another patron would be offended by her
conduct. Although "public lewdness" is described in the Penal Code, we agree with the ALJ
that it does not apply in the underlying proceeding. 

 The ALJ did, however, conclude there was substantial evidence to support a finding
that a place or manner violation occurred contrary to provisions of the Texas Alcoholic
Beverage Code. Specifically, she found that TABC established Land engaged in lewd
conduct because adult "entertainment should not extend to physical contact" between
patrons and I Gotcha's employees. "Lewd" has no fixed legal meaning in either the Penal
Code or the Alcoholic Beverage Code. Thus, we apply its ordinary meaning in our
analysis. (4) See Tex. Gov't Code Ann. § 312.002 (Vernon 2005). "Lewd" means obscene
or indecent, tending to moral impurity or wantonness. See Black's Law Dictionary 919 (7th
ed. 1999). 

 It is undisputed that I Gotcha operates a topless bar, and during cross-examination,
Watkins acknowledged that patrons expect sexual entertainment. It is not uncommon for
patrons to request a table dance at topless bars. However, according to the testimony,
Land went beyond what is generally expected in a table dance when she touched Watkins's
clothed genitals and licked them. 

 In the analysis of the ALJ's Proposal For Decision, she recites that TABC contended
that "one instance" had occurred where Land engaged in lewd conduct. However, at the
administrative hearing, Watkins responded affirmatively when asked whether he had
observed on eight to ten previous occasions between 1998 and 2001 "the same activity
each time, in that ladies dancing half nude, men there ogling, sexualities, et cetera, et
cetera." He could not, however, recall the particular offenses for which he had made
arrests.

 I Gotcha argues the ALJ's finding that provisions of the Alcoholic Beverage Code
were violated contradicts the finding that no Penal Code violation was found. It also argues
that Watkins's testimony alone was insufficient to establish a pattern of place or manner
violations. We disagree. I Gotcha provides no authority requiring a Penal Code violation
to sustain a violation of the rules or provisions of the Alcoholic Beverage Code. Further,
Watkins's testimony that he observed eight to ten instances of lewd conduct qualifies as
substantial evidence of a pattern.

 I Gotcha asserts in its brief that neither the Alcoholic Beverage Code nor the City of
Fort Worth had a "no touch" provision or ordinance in effect at the time of the incident.
Thus, it argues that the ALJ 's conclusion that Land's conduct should not have extended
to physical contact with a patron has no basis in statutory law. However, I Gotcha's
assertion is unsubstantiated by the record before us. Further, I Gotcha relies on two
criminal cases to support its contention. See generally Donoho v. State, 643 S.W.2d 698
(Tex.Cr.App. 1982) (finding the evidence insufficient to support deviate sexual intercourse);
Smykay v. State, 898 S.W.2d 350 (Tex.App.-San Antonio 1995, pet ref'd) (finding the
evidence insufficient to support public lewdness). Criminal cases are evaluated under a
different standard of review than the substantial evidence test, and we find Donoho and
Smykay do not apply. 

 Under the ordinary meaning of "lewd," Land's conduct in touching Watkins's genitals
and licking them can be characterized as vulgar entertainment which constitutes a violation
of certain provisions of the Alcoholic Beverage Code. See §§ 11.61(b)(2), 61.71(a)(1),
(11), and 104.01(6). Additionally, Watkins's testimony that he observed a pattern of place
or manner violations over numerous years is sufficient to support the ALJ's findings and
conclusions. We conclude TABC's order is reasonable and supported by substantial
evidence, and the trial court erred in substituting its judgment for that of TABC. Issue two
is sustained. Our disposition of issue two pretermits consideration of TABC's first issue.

 Accordingly, the trial court's judgment is reversed and judgment is rendered that I
Gotcha, Inc. d/b/a Main Stage have its Mixed Beverage Permit MB462005 and Mixed
Beverage Late Hours Permit LB462006 suspended for ten days or in lieu thereof, pay a civil
penalty of $1,500. See Tex. R. App. P. 43.2(c).

 Don H. Reavis

 Justice

1. The Conclusions of Law mistakenly contain two separate conclusions numbered
"3." The other conclusion labeled "3" is not relevant to our analysis as it pertains to
adequate notice.
2. I Gotcha cites Hardy St. Invest. v. Texas Water Rights Com'n, 536 S.W.2d 85, 87
(Tex.Civ.App.-Waco 1976, writ ref'd n.r.e.), for the substantial evidence test as being
"whether the evidence as a whole is such that reasonable minds could not have reached
the conclusion that the agency must have reached in order to justify its action." Hardy,
however, misinterpreted the Supreme Court's statement in Railroad Commission v. Shell
Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1030 (1942), that "[i]f the evidence as a whole is
such that reasonable minds could not have reached the conclusion that the agency must
have reached in order to justify its action, then the order must be set aside." Cf. Suburban
Util. Corp., 652 S.W.2d at 364; Dotson v. Tex. State Bd. of Medical Exam., 612 S.W.2d
921, 922 (Tex. 1981). 
3. Under the Texas Penal Code, public lewdness occurs if a person engages in sexual
contact in a public place, or if not in a public place, the person is reckless about whether
another is present who will be offended by the act. See Tex. Pen. Code Ann. § 21.07(a)(3)
(Vernon 2003).
4. Terms such as "lewd," "vulgar," and the phrase "public decency," as sole descriptive
elements of an offense, have been held too vague to be enforceable in criminal
proceedings. See generally Courtemanche v. State, 507 S.W.2d 545 (Tex.Cr.App. 1974)
(finding a statute void for vagueness because it contained "lewd" and "vulgar"; Irven v.
State, 138 Tex. Crim. 368, 136 S.W.2d 608 (1940) (finding a law ineffective for not
sufficiently defining "offensive to public decency"); cf. State v. Eaves, 786 S.W.2d 396, 399
(Tex.App.-Amarillo 1990), aff'd, 800 S.W.2d 220 (Tex.Cr.App. 1990) (holding a statute of
the Alcoholic Beverage Code not unconstitutionally vague because "intoxication" is
"sufficiently clear and unambiguous to give a person notice of the proscribed conduct"). 


alse" Name="Medium Shading 1 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00388-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 



FEBRUARY
3, 2011

 



 

IN RE YORKSHIRE INSURANCE CO., LTD. AND OCEAN MARINE INSURANCE CO., LTD.,
RELATORS



 



 

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

Relators, Yorkshire Insurance Company, Ltd.,
and Ocean Marine Insurance Company, Ltd. (collectively Insurers), filed a
petition for writ of mandamus seeking the overruling of respondents, the 84th
District Court of Hutchinson County, Texas, August 17, 2010 discovery order
that certain documents were privileged and that quashed a request to depose
Cynthia Gillman Fisher.  Real Parties in
Interest, Roy Seger, the estate of Shirley Faye
Hoskins, Diatom Drilling Company, and Cynthia Gillman Fisher (collectively,
the Segers), filed a response urging this Court to
deny Insurers request for mandamus relief. 
We will deny Insurers petition for writ of mandamus.

 

Background[1]

            After
this Court reversed and remanded certain issues in this case on direct appeal, see
Yorkshire Ins. Co., 279 S.W.3d at 775, Insurers filed a Notice of
Deposition seeking to depose Cynthia Gillman Fisher.[2]  Gillman was the general partner of Diatom,
who was the insured under a comprehensive general liability policy that
assigned its right to bring a Stowers[3]
action against Insurers to Roy Seger and Shirley Faye
Hoskins.  In response, the Segers moved to quash the deposition of Gillman and for
protective order regarding certain documents that had been held privileged by
the trial court by order dated December 14, 2004, but that had subsequently
become part of the appellate record.[4]

            In
the direct appeal resulting in remand, Insurers challenged the trial courts
ruling that the documents now sought to be protected by the Segers
were privileged as work product and attorney-client communications.  Our review of the record revealed that, [s]ome of the evidence sought by Insurers was included in the
appellate record in this cause.  Id. at 773. 
Further, we noted that, [a]fter reviewing all
of the documents provided to the trial court for in camera inspection [which remain under
seal in the appellate record], the documents Insurers seek by this issue are
duplicates of the documents that were included in the appellate record
[unsealed].  Id.
at 774.  Because nothing in the
appellate record reflected that Diatom or Gillman had asserted any claim that
these documents were privileged after they were publicly disclosed, we
concluded that, for the present litigation, Diatoms prior assertion of
privilege as to these documents has been waived.  Id. at 773.  However, we expressly noted that, because
Diatom was no longer a party to the case, our determination that Diatom had
waived its prior assertion of privilege in that appeal was not a determination
that Diatom had actual knowledge of the disclosure or that it had waived its
right to subsequently assert the privilege. 
Id. at 773 n.28.  

            The
trial court held a hearing on the motion to quash the deposition of Gillman and
for protective order relating to the documents. 
During this hearing, Diatom[5]
asserted that the documents were privileged and that it had not voluntarily
produced the documents to anyone other than when they were submitted to the
trial court for in camera
inspection.  Diatom suggested that the
documents must have been erroneously included unsealed in the appellate record
by the district clerk.  Further, the Segers contended that Insurers had already deposed Fisher
for the allotted ten hours and that the entirety of this deposition was
conducted before the trial court ruled on Diatoms claim that these documents
were privileged.  Insurers responded by
contending that this Court had already determined that Diatoms claim of
privilege as to these documents had been waived and that, to the extent that we
did not so hold, it was because the record did not establish whether Diatom was
actually aware of the public disclosure of these documents.  Insurers then presented evidence that Diatom
was actually aware of the public disclosure of these documents by October 31,
2005, and that it took no action to assert its claim of privilege relating to
these documents until it filed its motion to quash and for protective order on
February 8, 2010.  Insurers also
contended that they had a substantial need for additional time to depose
Gillman because they did not know the contents of these documents until after
they had completed their deposition of Gillman and these documents go to the
heart of Insurers Gandy[6]
defense to the pending Stowers action.  At the close of this hearing, the trial court
took the issue under advisement. 
Subsequently, on August 17, 2010, the trial court issued its order
quashing the deposition of Gillman and further finding that the documents are
privileged and may not be used in this litigation.  The trial courts order additionally orders
that all parties and counsel return any copies of these documents to Gillmans
attorney within 30 days of the order and that the district clerk place any
unsealed copies of these documents in the clerks record under seal.  

            By
their petition for writ of mandamus, Insurers contend that they are entitled to
mandamus relief because the trial court clearly abused its discretion by (1)
ruling that documents filed in the public records of an appellate court for
many years are subject to a claim of privilege, (2) failing to apply the snap
back procedures of Texas Rule of Civil Procedure 193.3(d) to Diatoms assertion
of privilege, (3) prohibiting the use of the documents in the underlying
litigation, requiring all parties and lawyers to return all copies of the
documents, and ordering public records sealed without compliance with
applicable rules, and (4) failing to apply the crime-fraud exception to
Diatoms claim of privilege.  Insurers
also contend that the trial courts abuse of discretion leaves them with no
adequate remedy by appeal because the challenged order vitiates Insurers
ability to present their Gandy defense. 
We disagree with Insurers contention that the trial courts order
denies them an adequate remedy by appeal.

Standard of Review

            Mandamus
is an extraordinary remedy that will issue only if (1) the trial court clearly
abused its discretion and (2) the party requesting mandamus relief has no
adequate remedy by appeal.  See In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004); Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). 
A trial court has no discretion in determining what the law is or in
applying the law to the facts.  Walker,
827 S.W.2d at 840. 
When mandamus is sought to overcome a trial courts conclusion that
evidence is privileged, this Court must determine whether the party asserting
the privilege has discharged its burden of proof.  See Barnes v. Whittington, 751 S.W.2d 493, 494 (Tex. 1988).  An appellate remedy is not inadequate because
it may involve more expense or delay than obtaining an extraordinary writ, rather it is inadequate only when parties stand to
lose their substantial rights.  Walker,
827 S.W.2d at 842. 
Whether ordinary appeal can provide an adequate remedy to a trial
courts abuse of discretion depends on a careful analysis of the costs and
benefits of interlocutory review.  In re McAllen Med. Ctr., Inc., 275 S.W.3d 458, 464 (Tex.
2008).  This balancing analysis
recognizes that the adequacy of an appeal depends on the facts involved in each
case.  Id. at
469.  

The Adequacy of Appeal

            For
purposes of this analysis, we will assume without deciding that Insurers met
their burden to establish that the trial court clearly abused its discretion in
issuing its August 17, 2010 discovery order. 
However, to establish their entitlement to mandamus relief, Insurers
must also establish that ordinary appeal would not provide them adequate
relief.  See In re Prudential,
148 S.W.3d at 135-36; Walker, 827 S.W.2d at 839.  In attempting to meet this burden, Insurers
contend that the trial courts order denies discovery going to the heart of
Insurers Gandy defense, and denies the reviewing court evidence that
would be necessary for it to determine whether the trial courts erroneous
order was harmful.[7]

            As
this Court has previously recognized, the general rule in a Stowers
action is that damages are fixed as a matter of law in the amount of the excess
of the judgment rendered in the underlying suit in favor of the plaintiff over
the applicable policy limits.  See
Yorkshire Ins. Co., 279 S.W.3d at 772.  However, the Texas Supreme Court has created
an exception to this general rule when the insured assigns his Stowers claim to the plaintiff in the underlying suit.  See Gandy, 925
S.W.2d at 714.  When such an
assignment occurs, the underlying judgment is not only not
conclusive, but is inadmissible as evidence of damages unless rendered
as the result of a fully adversarial trial. 
Id.  In making the
determination whether an underlying judgment was the result of a fully
adversarial trial, we must review the extent to which the parties to the
underlying proceeding participated.  See
Yorkshire Ins. Co., 279 S.W.3d at 772 n.25 (citing Gandy,
925 S.W.2d at 713).  When the
judgment is an agreed judgment, default judgment, or when the underlying
defendants participation is so minimal as to evidence
that the hearing was not adversarial, the judgment resulting from that hearing
may not be admitted as evidence of damages in the Stowers
action.  Id. (citing Gandy,
925 S.W.2d at 713, 714).

            In
analyzing Insurers Gandy defense in the initial appeal of this case, we
noted that the Segers only evidence of damages in
the Stowers action was the judgment from the
underlying suit, and that the trial court could only direct a verdict on
damages in favor of the Segers if the Insurers failed
to raise a genuine issue of material fact regarding the reliability of the
judgment as evidence of Diatoms damages. 
See id. at 773.  In other words, we had to determine whether
Insurers raised a genuine issue of material fact regarding whether the judgment
from the underlying suit was the result of a fully adversarial trial.  Our conclusion that the evidence raised such
a genuine issue of material fact did not rely on anything contained within the
documents or from the deposition testimony of Gillman.[8]  Thus, our review of Insurers Gandy
defense was limited to a review of Diatoms participation in the underlying
proceeding.

            In
the instant petition for writ of mandamus, Insurers contend that the trial
courts order denying them the ability to use the documents and to further
depose Gillman precludes Insurers from forging their Gandy defense
because this discovery is essential to Insurers defense, and going through
another trial without this vital evidence would result in an utter waste of
judicial and party resources.  We cannot
agree with these assertions.  During the
first trial of this Stowers action, Insurers raised
their Gandy defense, which was rejected by the trial court.  However, on appeal, this Court found that the
evidence raised a genuine issue of material fact regarding the defense without
considering the documents.  See id.  If, as Insurers now contend, the documents
and the additional deposition of Gillman are essential, vital, and necessary to
avoid an utter waste of judicial resources, then their assertion of the Gandy
defense in the initial Stowers action would have been
the assertion of a defense that Insurers were aware could not be supported by
the available evidence.[9]  However, this was not the case because, as we
found, see id., it is a review of Diatoms participation in the
underlying proceeding that determines whether the judgment in that proceeding
resulted from a fully adversarial trial. 
See Gandy, 925 S.W.2d at 713.  While we certainly understand Insurers
desire to have the documents and Gillmans additional deposition testimony
available to bolster their Gandy defense, we cannot conclude that this
evidence is of such a vital nature as to justify this Courts interlocutory
interference with the trial courts discovery rulings.  See In re McAllen Med. Ctr., Inc.,
275 S.W.3d at 464.

Conclusion

            Because
this Court concludes that Insurers have failed to meet their burden to show how
the trial courts August 17, 2010 discovery order denies them an adequate
remedy by appeal, Insurers petition for mandamus relief is denied.[10]

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

 











[1] We will limit our
discussion of the facts and procedural history in this opinion to those that
are directly relevant to our disposition of this matter.  For a more complete recitation of the facts
and procedural history of this litigation, see our June 20, 2007 opinion.  See Yorkshire
Ins. Co. v. Seger, 279 S.W.3d 755 (Tex.App.Amarillo 2007, no pet.).

 





[2] In an effort to be
consistent with our prior opinion, further reference to Cynthia Gillman Fisher
will be by reference to Gillman.

 





[3] See
G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 548 (Tex. Commn App. 1929, holding approved).

 





[4] Specifically, the
documents at issue in this proceeding are identified as Privileged Documents
1-44 Delivered from Jody Sheets to Mark N. Buzzard in
Open Court on January 8, 2003.  Further
reference to the documents will be references to the documents so identified
and appearing unsealed in the appellate record.





[5] During this hearing
and in the briefs submitted in this mandamus proceeding, the Segers appear to contend that Diatom and Gillman have
separate rights to claim privilege in regard to these documents.  However, it is clear that Gillmans
participation in this case has always been as a representative of Diatom and
not in her individual capacity.  Further,
the trial courts December 14, 2004 order finding these documents to be
privileged was based on Diatoms assertion of privilege, rather than
Gillmans.  As such, while we recognize
that Gillman is the individual that possesses the right to assert the privileges,
in this case and as to these documents, she holds that right as the
representative of Diatom.





[6] See State
Farm Fire & Cas. Co. v. Gandy,
925 S.W.2d 696, 714 (Tex. 1999).  





[7] Both of Insurers
contentions regarding how the trial courts discovery ruling denies them an
adequate remedy by appeal are categories of discovery rulings that were
identified by the Texas Supreme Court as rulings that would render appeal
inadequate.  See Walker, 827 S.W.2d at 843. 
However, the ad hoc categorical approach employed in Walker has
subsequently been rejected by the Texas Supreme Court in favor of the balancing
of costs and benefits of mandamus review, as presented in In
re Prudential, 148 S.W.3d at 136.  See
In re McAllen Med. Ctr., 275 S.W.3d at 468-69.






[8] Specifically we
stated, Insurers raised the question of whether the judgment in the underlying
action was the result of a fully adversarial trial.  As evidence that it was not, Insurers correctly
indicated that Diatom was not represented by counsel at the trial in the
underlying suit, made no opening or closing statements, offered no evidence,
and conducted no cross-examination of the Segers'
witnesses.  Further, Insurers cite the
trial court's own characterization of this proceeding
as a nihil dicit prove
up.  Id.

 





[9] This is so because
the documents did not become part of the public record until after judgment in
the initial Stowers action had been issued and the
appellate record was prepared.





[10] Because the trial on the remanded issues was
scheduled to begin on November 1, 2010, Insurers filed a motion for stay of
trial pending this Courts resolution of the current mandamus proceeding.  We granted that motion.  As this opinion resolves the current mandamus
action, we now vacate our prior stay order.